JUDGE FURMAN

**13 CV 8808**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANGEL ZAYAS,

        Plaintiff,

-vs-                                             **COMPLAINT**

RAYMOND W. KELLY, Commissioner of the
New York City Police Department; THE CITY
OF NEW YORK; POLICE OFFICER JOHN
PRITCHARD; and POLICE OFFICER JOHN
DOE,

        Defendants.
------------------------------------------------------------X



### PRELIMINARY STATEMENT

1. This is a civil rights action to vindicate the freedom of law-abiding photographers to photograph police activity in public locations within New York City and the freedom of citizens to criticize police misconduct. The plaintiff Angel Zayas was forced out of the subway for trying to photograph police performing a stop-and-frisk and was then arrested for complaining about his treatment.

2. The freedom to document government misconduct is vital to a free exchange of ideas in a functioning democracy. Denying this right would chill free discourse in the press and among citizens. The societal change of the Civil Rights Era was spurred in large part by photographs and accounts of police abuse against civil rights protesters. Controversial police practices during Occupy Wall Street and New York City's stop-and-frisk program highlight the public's continuing interest in maintaining awareness of police practices. The growing ubiquity of portable digital cameras makes it increasingly likely that police will encounter

1

citizens photographing their activities. It is vital that constitutional violations like the ones suffered by Mr. Zayas are addressed so that they are not repeated.

3. Plaintiff Angel Zayas is an aspiring photojournalist who, despite lacking a regular income or stable living situation, has had photos published on the Time Magazine website and in The Guardian newspaper. In the face of financial difficulty, Mr. Zayas continues to pursue photojournalism both as a career and a civic calling. In November 2012, as Mr. Zayas was preparing to photograph a police stop-and-frisk on a subway station mezzanine, officers grabbed him, forced him outside and then arrested him for criticizing their behavior.

4. The defendants have violated Mr. Zayas' rights under the First and Fourth Amendments of the United States Constitution, his rights under Article I, Sections 8 and 12 of the New York State Constitution, under New York State Law, and under common law. He seeks compensatory damages for his arrest, attorney's fees, and any other relief the Court deems necessary.

## PARTIES

Plaintiff

5. Plaintiff ANGEL ZAYAS resides in New York City. Mr. Zayas has been a freelance news photographer for four years and frequently encounters the police as a journalist.

Defendants

6. Defendant THE CITY OF NEW YORK is a municipal corporation duly incorporated and existing within the State of New York, pursuant to state law. The New York City Police Department (NYPD) is an agency of the City of New York.

7. Defendant RAYMOND W. KELLY is the Commissioner of the New York City Police Department and as such has policymaking authority and supervisory authority over all officers and operations of the NYPD, including responsibility for training, recruiting, and managing all NYPD officers. He is sued in his official capacity.

8. Defendant Police Officer JOHN PRITCHARD was an employee of the NYPD at all relevant times. He is sued in his official and individual capacities.

9. Defendant Police Officer JOHN DOE was an employee of the NYPD at all relevant times. He is sued in his official and individual capacities.

## FACTS

### The Unlawful Seizure and Arrest of Angel Zayas

10. Plaintiff Angel Zayas is a struggling photographer who is committed to journalism. Though Mr. Zayas has little money, he works diligently as a freelance press photographer with an online network of photojournalists. It is a testament both to Mr. Zayas' commitment to journalism and to his photographic skill that, despite currently lacking a living wage, Mr. Zayas has had a photograph published on the Time Magazine website and a photograph published in The Guardian newspaper. Mr. Zayas recently received an official press pass from the NYPD.

11. On November 27, 2012, Mr. Zayas was scouting for photojournalism opportunities in the subway station below Manhattan's Grand Central Terminal. Prior to events described here, he often stationed himself in the Grand Central subway station when scouting for newsworthy events in New York City.

12. Mr. Zayas observed two men who he believed were plainclothes NYPD officers questioning and frisking a Hispanic man. Mr. Zayas knew that the NYPD's stop-and-frisk practice was the subject of intense public interest.

13. Mr. Zayas positioned himself 20 to 30 feet away from where the stop-and-frisk was occurring.

14. After seeing that Mr. Zayas had a camera and was observing the scene, Defendant Officer John Doe approached Mr. Zayas and demanded to know what he was doing. Mr. Zayas, who was wearing an ID showing he was as a member of a photojournalist network, explained that he was a press photographer and that he intended to photograph the stop-and-frisk.

15. Officer Doe replied that he did not care if Mr. Zayas was a press photographer and demanded that Mr. Zayas leave. Mr. Zayas asserted his right to photograph police conduct unfolding in full view of the public.

16. Officer Doe jammed his finger against Mr. Zayas' chest as he told Mr. Zayas that he would physically eject him.

17. Mr. Zayas, now fearing false arrest and physical mistreatment at the hands of the increasingly aggressive police officer, pressed the record button on his camera and began recording the scene.

18. Officer Doe grabbed Mr. Zayas, spun him around, and pushed him through the subway turnstile, up an escalator and out of Grand Central Terminal, using the front of Mr. Zayas' body to push open the door leading out of the terminal and onto the street.

19. As he was being pushed from the station, Mr. Zayas told Officer Doe, "You can't eject me because I took photographs." Officer Doe said, "Actually, yes, I can." In fact, the New York City Transit Rules of Conduct allow photography in the subway system, while official

NYPD policy states that bystanders' photographing or filming the police does not give officers authority to detain or arrest them.

20. As Mr. Zayas was being forced out of the station, he felt humiliated and powerless.

21. Officer Doe then changed his story, admitting that Mr. Zayas had a right to photograph him. He now claimed, for the first time, that Mr. Zayas had been too close to the stop-and-frisk, even though Mr. Zayas had been no closer than 20 feet from the incident. When Mr. Zayas objected and said that he knew his rights, Officer Doe stated that Mr. Zayas was "acting like a fucking idiot."

22. After pushing Mr. Zayas out onto the sidewalk, Officer Doe held his hand up and blocked Mr. Zayas' path. Mr. Zayas insisted that the officers' actions were wrongful, that he had committed no crime and that he either be arrested if he had indeed committed a crime or that he otherwise be allowed back into Grand Central Terminal.

23. Officer Doe then grabbed Mr. Zayas a second time, telling him, "You ran your mouth too much, now you're being arrested." Officer Doe spun Mr. Zayas, shoved him against an unmarked police vehicle, pulled his hands behind his back and handcuffed him tightly.

24. Though Mr. Zayas emphatically asserted his right not to be detained without cause, at no point did Mr. Zayas speak at an unreasonable volume or intend to cause, or risk, or actually cause public inconvenience, annoyance or alarm.

25. Over the objections of Mr. Zayas, Defendant Officer John Pritchard grabbed Mr. Zayas' camera and, in concert with Officer Doe, turned it off.

26. Mr. Zayas was kept outside, in handcuffs, in the rain and in full view of the public for approximately 45 minutes, until a police van picked him up and drove him to NYPD Transit District Four at Union Square. Police kept him handcuffed for a total of two hours before he was issued a summons for disorderly conduct and released.

27. The charge was ultimately dismissed.

28. Due to fear of police intervention, Mr. Zayas has significantly reduced the frequency of his photojournalistic activities. The quality of the photographs that Mr. Zayas does take is also diminished as a result of the hesitation necessary for Mr. Zayas to make sure no police are observing him.

29. Mr. Zayas has since encountered Officer Pritchard on two occasions and both times has become anxious and fearful.

30. Mr. Zayas was hurt, offended, frightened and humiliated by his mistreatment.

31. At all times, Defendants' actions were taken under color of law.

## NYPD Retaliation Against Photography of Police Activity

32. Upon information and belief, New York City and the NYPD have a policy, practice or custom of seizing, arresting or otherwise harassing photographers, both amateur and professional, who photograph police activities taking place in public view.

33. The NYPD has repeatedly failed to adequately inform its officers and agents of the right of the public and the press to photograph public police actions, despite receiving numerous complaints from the press and being sued repeatedly.

34. Public interest groups and press associations have sent the NYPD at least five letters informing them of the general practice and of instances of specific police misconduct surrounding the right to photograph. In May 2006 the New York Civil Liberties Union wrote to Defendant Raymond W. Kelly. In November 2011 the New York Times wrote to NYPD Deputy Commissioner Paul Browne. In February 2012 the New York Times sent another letter. In October 2012 the National Press Photographers Association wrote to Defendant Raymond W. Kelly.

35. The pattern of photographers being unlawfully halted, seized or arrested by NYPD officers merely for taking photographs of police activity has been well documented in the media. For instance, Gothamist, an online news source, has published a series of articles regarding the ongoing harassment of photographers. In July 2012 the Global Justice Clinic at N.Y.U. School of Law and the Walter Leitner International Human Rights Clinic at the Leitner Center for International Law and Justice at Fordham Law School issued a report, *Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street*, which describes 18 arrests of people photographing or filming Occupy Wall Street protests in 2011.

36. Surrounding the events of the one-year anniversary of the beginning of Occupy Wall Street, media reported that at least ten photographers were arrested for filming or photographing police.

37. Media have also reported numerous individual instances of photographers being harassed and even arrested for filming or photographing the police, including the following incidents. On or around June 28, 2012, the 30th Precinct put up posters of Harlem photographers and activists Matthew Swaye and Christina Gonzalez describing them as "30th Pct Professional Agitators." Gonzalez was also arrested on or around May 18, 2013 for filming an NYPD checkpoint. In September 2012 Diego Ibanez was arrested for filming arrests in a subway station. In April 2012 Clark Stoeckley was issued a summons for filming NYPD officers. In June 2012 Hadiyah Charles, who the White House has named a "Champion of Change" for her HIV grassroots and policy work, was arrested for filming a stop-and-frisk in Brooklyn. In August 2012 New York Times photographer Robert Stolarik was arrested while documenting a stop-and-frisk in the Bronx. In January 2013 Shimon Gifter was arrested after filming police in Flatbush, Brooklyn. And in April 2013 student Justin Thomas was arrested for filming the NYPD's 72nd Precinct building.

38. In the last six years prior to the filing of this case, at least seven federal cases have been filed against New York City and the NYPD for arresting photographers in violation of the First Amendment.

39. Though Mr. Kelly, an NYPD policy-maker, has been put on notice of continued First Amendment violations in disregard of apparent official department policy, the violations continue. These continued violations demand supervision and discipline from the highest levels of the department.

40. Upon information and belief, Mr. Zayas was unlawfully detained and falsely arrested pursuant to the policies, practices or customs outlined above.

## JURISDICTION AND VENUE

41. This Court has subject-matter jurisdiction over plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3-4).

42. This Court has supplemental jurisdiction over all state constitutional and state law claims pursuant to 28 U.S.C. § 1367(a).

43. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that plaintiffs claims arise in the Borough of Manhattan, New York County, New York State, within the Southern District of New York.

## FIRST CAUSE OF ACTION

44. The defendants' actions violated plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION

45. The defendants' actions violated plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

## THIRD CAUSE OF ACTION

46. The defendants' actions violated plaintiff's rights under §§ 8 and 12 of Article I of the New York State Constitution.

## FOURTH CAUSE OF ACTION

47. The defendants' actions violated plaintiff's rights under the common law of the State of New York to be free from false arrest, assault, and battery.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff requests that this Court:

(1) Assume jurisdiction over this matter;

(2) Declare that the defendants violated the plaintiff's rights and award compensatory damages;

(3) Award attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(4) Grant any other relief the Court deems appropriate.

Respectfully submitted,

NEW YORK CIVIL LIBERTIES UNION FOUNDATION

*/s/ Christopher Dunn*

CHRISTOPHER DUNN
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 607-3300

Counsel for the plaintiff

Dated: December 12, 2013
       New York, N.Y.

On the Complaint:
GEOFFREY WERTIME*
Law Student
New York University School of Law
Civil Rights Clinic

KIRILL BASIN*
Law Student
New York University School of Law
Civil Rights Clinic

*The Plaintiff and the New York Civil Liberties Union Foundation will be seeking leave of court to permit these students to serve as attorneys in this matter pursuant to the Southern District's Plan for Student Practice in Civil Actions.